IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES VAN WINKLE, §
§
Plaintiff, §
§
vs. § CIVIL ACTION H-16-2694
§
PINECROFT CENTER, L.P., *ET AL.*, §
§
Defendants. §

## OPINION AND ORDER

Pending before the Court in the above reference suit, grounded in the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et al.,* and the Americans With Disability Act Accessibility Guidelines ("ADAAG"), 28 C.F.R. 36, are (1) Defendant Target Corporation's ("Target"s") [Rule] 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction and [Rule] 12(b)(6) motion to dismiss for Plaintiff James Van Winkle's failure to state a claim or, in the alternative, [Rule 12(e) motion] for a more definite statement (instrument #10); and (2) Defendant Pinecroft Limited, L.P. d/b/a Pinecroft Partners, L.P.'s ("Pinecroft's") identical motion (#20).

### Standards of Review

**Rule 12(b)(1)**

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001);

*see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id., citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack,

i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995). The two motions to dismiss here are facial attacks.

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*. The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where

jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[1] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997),

---

[1] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.*  To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Rule 12(h)(3) states, "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.

**Rule 8(a)**

Rule 8(a) requires that "[a] pleading that states a claim for relief must contain"

> (a) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (b) a short plain statement of the claim showing the pleader is entitled to relief; and
> (c) a demand for the relief sought, which may include relief in the alternative or different types of relief.

**Rule 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 550 U.S. at 570. "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 678. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford

plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

## Applicable Substantive Law

Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods and services, facilities, privileges, advantages, or accommodations of any place of public accommodation[2] by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Discrimination in violation of the Act includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is 'readily achievable'"[3] and "a failure to take such steps as may be

_____

[2] 42 U.S.C. § 121811(7), lists the types of private entities that are considered public accommodations.

[3] "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."  28 C.F.R. § 36.304(a).  The regulations list examples of various ways to

necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii and iv). The regulation 28 C.F.R. § 36.304(c) establishes priorities for complying with the removal requirements:

> (1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking or public transportation. These measures include, for example, installing an

---

remove barriers (§ 36.304(b)):

> (1) Installing ramps;
> (2) Making curb cuts in sidewalks and entrances;
> (3) Repositioning shelves;
> (4) Rearranging tables, chairs, vending machines, display racks, and other furniture;
> (5) Repositioning telephones;
> (6) Adding raised markings on elevator control buttons;
> (7) installing flashing alarm lights;
> (8) Widening doors;
> (9)Installing offset hinges to widen doorways;
> (10) Eliminating a turnstile or providing an alternative accessible path;
> (11) Installing accessible door hardware;
> (12) Installing grab bars in toilet stalls;
> (13) Rearranging toilet partitions to increase maneuvering space;
> (14) Insulating lavatory pipes under sinks to prevent burns;
> (15) Installing a raised toilet seat;
> (16) Installing a full-length bathroom mirror;
> (17) Repositioning the paper towel dispenser in the bathroom;
> (18) Creating designated accessible parking spaces;
> (19) Installing an accessible paper cup dispenser at an existing inaccessible water fountain.
> (20) Removing high pile, low density carpeting; or
> (21) installing vehicle hand controls.

entrance ramp, widening entrances, and providing accessible parking spaces.
(2) Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Braille and raised character signage, widening doors, providing visual alarms, and installing ramps.
(3) Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, proving accessible signage, widening of toilet stalls, and installation of grab bars.
(4) Fourth, public accommodation should take any other measures necessary to provide access to the goods, services, privileges, advantages, or accommodations of a place of public accommodation.

The House Report on the ADA stated, "The purpose of the ADA is to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life; to provide enforceable standards addressing discrimination against individuals with disabilities; and to ensure that the Federal government plays a central role in enforcing these standards on behalf of individuals with disabilities." H. Rep. No. 101-485, pt. 2, at 22-23 (1990).

In a very broad grant of standing, 42 U.S.C. § 12188(a)(1) provides injunctive relief

to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with disability to engage in a futile gestures if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provision.

Money damages are not available in a private action against a private owner of a place of public accommodation under Title III of the ADA, but only injunctive relief and attorney's fees. Section 308(a) of the ADA, 42 U.S.C. §§ 12182(a)("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.") and 12188(a)(1)(" . . . Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."); 42 U.S.C. § 12205 ("In any action or administrative proceeding commenced pursuant to this chapter, the court . . . may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 573-74 & n.5 (S.D. Tex. 2014); *Todd v. American Multi-Cinema, Inc.*, 222 F.R.D. 118, 120 n.2 (S.D. Tex. 2003).

While the statute does not define "place of public accommodation," it does define "public accommodation": "private entities are considered public accommodations . . . if the operations of such entities affect commerce" and "fall into one of twelve enumerated categories" in 42 U.S.C. § 12181(7).[4] The

---

[4] **(7) Public accommodation**

Department of Justice's regulations define "place of public

---

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--

(A) an inn, hotel, motel, or other place of lodging except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the resident of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a healthcare provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

accommodations" as "a facility operated by a private entity whose operations affect commerce and fall within at least one of twelve enumerated categories very similar to those in 42 U.S.C. § 12181(7). *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 532-34 (5th Cir. 2016).

### Plaintiff's Allegations

Plaintiff, whose physical disability substantially limits one or more major life activities and requires him to use a wheelchair to move around, sues the lessees, owners, or operators of stores, restaurants, and other businesses, including restrooms and the parking lot, at Pinecroft Center II, L.P., all places of public accommodation, for discriminating against him by denying him access to the premises and the full and equal enjoyment of goods, services, privileges, advantages and accommodations in violation of the ADA by failing to remove impeding architectural barriers to individuals with disabilities unless the Court grants him injunctive relief.

Plaintiff further states that he "has a real, continuing, and immediate threat of future discrimination by Defendants' violation of and non-compliance with the ADA because he plans on returning to the Subject Premises in the near future." Complaint at ¶ 39. He also reveals that he is "a tester for the purpose of asserting his civil rights by monitoring, ensuring and determining whether places of public accommodation are in compliance with the ADA." Complaint at ¶ 37.

### Target's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (#10)

On or about 2015, Plaintiff claims that when he visited the

premises in dispute to purchase items, he found architectural barriers barring him and wheelchair-dependent handicapped individuals from access in the parking lot and in the stores.

Target contends that (1) the Court lacks subject-matter jurisdiction over this case because Plaintiff lacks Article III standing; and (2) Plaintiff's complaint fails to provide fair notice of any of the claims asserted or fails to state plausible claims, while it "regurgitates--almost verbatim--the same nondescript factual allegations contained in the other 19 lawsuits[5] Plaintiff has filed in the United States Southern District of Texas--Houston Division within the past two years alone." #10 at p. 2.

Target asserts that "Plaintiff is a serial-filer and self-described 'tester' who personally seeks out barriers that he believes violate" the ADA.[6] Target lists the nineteen ADA suits, with case numbers and the dates that they were purportedly filed by Plaintiff in this District during the past two years, against local

---

[5] The Court finds that three incorrect case numbers were provided: H-16-cv-02165, H-16-cv-606, and H-15-cv-1546.

[6] In *Gilkerson*, 1 F. Supp. 3d at 574-75, explains that in a number of cases around the country disabled individuals, often "along with an organization dedicated to the rights of the disabled, are 'serial plaintiffs' or 'testers' acting a private attorneys general challenging various entities' noncompliance in their places of public accommodation with Title III of the ADA, leading to a wide and varied spectrum of judicial decisions addressing complex issues of, and policies regarding, standing." The *Gilkerson* court, *id.* at n.6, also quotes the definition of a tester in *McConnell v. Canadian Pacific Hills Plaza*, 2014 WL 201102, at *1 n.1 (M.D. Pa. Jan. 16, 2014)("an individual with a disability who repeatedly visits places of public accommodation with the dual motivation of verifying ADA compliance along with availing himself or herself with the goods and/or services available.").

retail establishments, alleging similar if not identical Title III ADA claims, nearly all of which have settled. #10 at p. 3. Target asserts that in each Plaintiff "mechanically claims that: (1) he visited a defendant's retail establishment; (2) he encountered 'architectural barriers' at a defendant's retail establishment; (and [3]) he intends to return to the defendant's retail establishment." #10 at p. 3.

Target maintains that Plaintiff lacks "the irreducible constitutional minimum" of Article III standing, which he bears the burden of demonstrating his standing by showing (1) that he "suffered an injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[; (2)] "a causal connection between the injury and the conduct complained of--the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"[; and (3)] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision,'" what is generally known as redressibility. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)(citations omitted). "[B]ecause injunctions regulate future conduct, a party seeking injunctive relief must allege . . . a real and immediate--as opposed to a merely conjectural or hypothetical--threat of future injury." *Wooden v. Bd. of Regents Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). Furthermore, where the plaintiff seeks declaratory and injunctive relief, . . . the plaintiff must also

show a significant possibility of future harm; it is not enough to show only a prior injury. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Moreover because the ADA provides for injunctive relief, plaintiffs complaining about architectural barriers at public accommodations have standing to bring claims only if they show a plausible intention or desire to return to the place but for the barriers to access. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Intent to return to the place of injury "some day" is not sufficient. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions-without any description of concrete plans, or even any specification of *when* the some day will be--do not support a finding of the 'actual or imminent' injury that our cases require. [emphasis in original]."[7] The court must decide standing based on

---

[7] In *Gilkerson*, 1 F. Supp. 3d at 581-82, this Court addressed decisions by courts in the Fifth Circuit finding that the likelihood of future injury is measured by whether the plaintiff is likely to return to the defendant's business and applying a four-prong test:

Some courts have required that a plaintiff seeking injunctive relief under Title III must establish standing by alleging a concrete, particularized, and plausible plan to return to the out-of-compliance public accommodation that discriminated against her. In *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997), the Fifth Circuit opined, "To obtain standing for injunctive relief, a plaintiff must show that there is a reason to believe that he would directly benefit from the equitable relief sought. In other words, a plaintiff must face a threat of present or future harm [citation omitted]." Therefore [the plaintiff] must plead facts demonstrating that she intends, and is likely, to return to [Defendant's] ATM by pointing to such factors as its proximity to her home, her past patronage, the frequency of her travel near that ATM, and her concrete plans to do so and when. *Davis v. First Nat'l Bank of Trenton*, No. 4:12-

the facts at the time the suit is filed; thus the plaintiff's effort to bolster standing after that time cannot help him. *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. 3:05-CV-1307, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005). In considering the likelihood of return, courts consider such factors as "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." *Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.,* No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 594 (S.D. Tex. 2014). Although Plaintiff claims he is a resident of Texas, in his Complaint he fails to provide his address and the proximity of his residence to Target and other Defendants. Nor has he given a specific date when he visited

---

CV-396, 2012 WL 7801707, at *8 (E.D. Tex. Dec. 2012, *citing Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.*, No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005)("'[S]omeday intentions'--without any description of concrete plans, or indeed even any specification of *when* the some day will be--do not support a finding of the 'actual or imminent' injury that our cases require.'")(*quoting Lujan*, 504 U.S. at 564); *Hunter v. Branch Banking and Trust Co. ("Hunter II")*, Civ. A. No. 12-CV-2437-D, 2013 WL 4052411, at *2, 4 (N.D. Tex. Aug. 12, 2013)("[W]hat constitutes a sufficiently concrete plan to return must be evaluated in context. For example, where the allegedly infringing site is many miles away or requires reservations, it is reasonable to require more than a statement that the plaintiff intends to return in the future. But where the allegedly infringing site is an ATM in an area the plaintiff frequently visits, it is unreasonable to impose similar requirements.").

Target's property. "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), *citing O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1983).

Nor is Plaintiff's ambiguous pleading of his intent to return to Defendant's establishment, the third factor, adequate to establish Article III standing––he does not specify any dates, how often he intends to visit, or why he intends to visit it. He does not provide "concrete" plans to return.[8]

Last, Plaintiff does not provide any facts suggesting Plaintiff frequently travels near Target's establishment for the fourth factor.

Plaintiff's complaint should also be dismissed under Rule 12(b)(6) for failure to state a single claim upon which relief can be granted. Plaintiff's claimed ADA violations of architectural barriers are merely conclusory and have no relation to Target's property. He has not specified a single act or charge about the

---

[8] This Court notes that the Fifth Circuit has hinted that it does not limit a showing of standing to evidence that the plaintiff had the concrete, particularized, plausible plan to return or likely to return. In *Gilkerson*, 1 F. Supp.3d at 583, this Court suggested that it also applies, alternatively, the "deterrent effect doctrine," "which holds that an individual suffers an injury-in-fact sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law; plaintiffs need not engage in the 'futile gesture' if returning to a building with known barriers that the owner does not intend to remedy.'" *Id.* "A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there" and shows knowledge of the barriers. *Id.*

alleged violations.    For example, while he alleges that various curb ramps in Defendants' parking lot do not meet statutory requirements, he does not identify the tract or the ramps in or around handicap parking spaces of which Plaintiff complains.

In the alternative, Target urges that Plaintiff should be required to amend his complaint to provide a more definite statement under Rule 12(e).    Proving specific examples for clarification on page 12 of #10, Target finds Plaintiff's current complaint to be vague, ambiguous and unable to put Target on fair notice of his claims against it.

### Pinecroft's Substantially Identical Motion (#20)

Pinecroft's claims are the same, word for word, as those made in Target's motion.


### Plaintiff's Response (#47) to #10 and 20

In response to the identical motions, Plaintiff has provided Defendants with his address and proximity to the center (he lives in Montgomery County eighteen miles from the property in dispute), the date he visited the property (April 2015), his intention to return to the property after the architectural barriers issue is resolved), and the frequency of his visits (very frequent because he has multiple ADA lawsuits against nearby establishments). *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2012)(holding that a distance of 30.5 miles does not make the threat of future injury conjectural).

If the Court requires Plaintiff to amend, he will include these facts.    Moreover he argues that he is not required to

identify a specific date on which he plans to return. *Norkunus v. Seahorse*, 720 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2010).

Insisting he will return in the near future, Plaintiff maintains that he wants to return to the disputed premises to assure himself, as a "tester," that it is in compliance with the ADA and that individuals with disabilities "will have full and equal enjoyment of the property without fear of discrimination." Finally, Plaintiff points out specific facts that he has alleged regarding violations of the ADA and the ADAAG.

### Target's Reply (#48)

Noting that Plaintiff's response was filed one day after the deadline, Target asserts it is a "technicality that demonstrates Plaintiff's continued pattern of disregarding the rules." #48 at p.2. Not only did Plaintiff fail to appear for the status conference on January 18, 2017, but he also missed the deadline for responses to the pending motions to dismiss that was set at that conference. Therefore Plaintiff asks the Court to disregard Plaintiff's response.

Moreover, argues Target, Plaintiff has admitted inadequacies in his pleading. He begins his response by conceding that "the motions to dismiss are correct" with respect to missing information that Plaintiff has since provided to Defendants.

Target contends that Plaintiff's Complaint is still inadequate and does not provide Target with fair notice. Plaintiff has sued nine Defendants; he has alleged conclusory ADA violations, including architectural barriers that have no relation to Target's property. Plaintiff has not specified a single act or complaint

about Target's alleged violations of Title II violations under the ADA. He also asserts all claims generically against "Defendants." Target insists its tract does not contain alleged ramps in or around the handicap parking places. "[A] complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

### Court's Decision

To satisfy Rule 12(b)(1), Plaintiff bears the burden of showing the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 561. He must allege and ultimately prove his "injury-in-fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Id.*, at 560. Further he must allege a significant possibility of future harm, especially since he seeks injunctive relief. *O'Shea v Littleton*, 414 U.S. 488, 495 (1974); *Wooden*, 247 F.3d at 1284.

Plaintiff's complaint alleges that around 2015, in what appears to be his sole trip to Pinecroft Center II, that he "visited the Subject Premises to conduct business--i.e., purchase items--and encountered architectural barriers to access at the parking lot and stores of the Subject Premises." *Id.* at ¶ 29. He further complains that he "was not able to access, among other things, entrance access and path to travel, access to goods and services or public restrooms at the Subject Premises without encountering architectural barriers." *Id.* at ¶ 33. He claims that he "shall return to the Subject Premises once the barriers violating the ADA are removed; however, Plaintiff is currently

deterred from returning as a result of the barriers to access present [*sic*] at the stores and facilities located on the Subject Premises." *Id.* at ¶ 34. He also states that he "has a real, continuing, and immediate threat of future discrimination by Defendants' violation of a non-compliance with the ADA because he plans on returning to the Subject Premises in the near future." *Id.* at ¶ 39. He further concedes he is a "tester."

While Plaintiff recites such vague boilerplate language that tracks the statute, he also provides very specific examples of architectural barriers at Pinecroft Center II, including location and measurements, that allegedly denied him access to the center from the parking lot and to the stores, their goods, and their services. See Complaint, #1, pp. 8-11. He does not link any of these barriers to a particular Defendant, however.

The Court has extensively reviewed case law on standing to assert claims under Article III of the ADA. Courts in this Circuit, as well as elsewhere, have applied different theories to determine if the plaintiff has standing, and there does not appear to be an established, definitive approach. *Gilkerson*, 1 F. Supp.3d at 580-82. The Court finds that courts even in this Circuit vary widely on what factors they conclude must be included in a complaint to establish standing. Thus the Court examines Plaintiff's complaint to see if it satisfies any of the tests employed by district courts in the Fifth Circuit to establish standing and to state a claim for which relief may be granted.

Some courts recognize the theory that after experiencing a public accommodation that discriminates against disabled

individuals because of architectural barriers, a plaintiff seeking injunctive relief under Title III of the ADA must plead a concrete, particularized and plausible plan to return to the public accommodation discriminating against him because its architectural barriers are out of compliance with the accommodations mandated by the statute. *See, e.g.*, *Gilkerson*, 1 F. Supp. 3d at 581-82; *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 703-06 (W.D. Tex. 2010); *Access 4 All*, 2005 WL 2989307, at *3. *See, e.g., 4 All, Inc.*, 2005 WL 2989307, at *3("'[S]uch 'some day intentions'--without any description of concrete plans, or indeed even any specifications of *when* the someday will be--do not support a finding of the 'actual or imminent' injury that our cases require.'"), *citing Lujan*, 504 U.S. at 564.

Some district courts in the Fifth Circuit have applied the four-prong test to determine whether a plaintiff adequately pleaded the likelihood of future injury based on the likelihood of the Plaintiff's return to the offending premises. With regard to showing a likelihood of recurrent discrimination, Plaintiff's complaint does not apply nor allege facts that would satisfy all four prongs of the test: "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." *See, e.g., Gilkerson,* 1 F. Supp. 3d 570, 594; *Access 4 All, Inc.,* 2005 WL 2989307, at *3. Plaintiff states he has provided some of this information to Defendants, but has not formally pled, as he must, that he lived eighteen miles

from the property in dispute, which is sufficient proximity according to a number of courts ruling on the matter to support in part his claim of standing. Nevertheless, his complaint does not state whether he ever visited the shopping center before, he does not allege a concrete plan for return, but only states that he intends to return after the barriers are removed, and his pleading as to frequency of travel to the center is hazy at best. Thus these jurisdictional facts suggest that he fails to satisfy this standing test. The court in *Hunter v. Branch Banking and Trust Co.*, Civ. A. No. 3:13-CV-2437-D, 2013 WL 4052411, at *3 (N.D. Tex. Aug. 12, 2013), observes in a deterrent effect case, "Because the plaintiff must still prove under the 'deterrent effect' method that she has an intent to return, the four-factor test applied to 'intent to return' cases also pertains to 'deterrent effect' cases to determine whether the plaintiff is in fact suffering an injury because she is being deterred from using the noncompliant accommodation."

Other, more liberal variations of the deterred effect theory also exist. Some district courts in this Circuit have recognized a more lenient version, which presumes that the impaired individual suffers the injury of a lack of access to stores if he is deterred from patronizing a public accommodation because of noncompliant barriers without addressing a plan to visit it, no less return. *See, e.g., Gilkerson*, 1 F. Supp. 3d at 583 (noting that "[a] number of courts have rejected the 'intent to return' or 'likely to return' theory as the only way to demonstrate standing for injunctive relief on the grounds that the odds of the injury

recurring are certain where a building is not in compliance with
the ADA' and any person 'with the same disability' will face the
same barrier on any visit.'  Instead some courts apply [a variant
of the] 'deterrent effect doctrine,' which holds that an individual
suffers an injury-in-fact sufficient to confer standing if he is
deterred from visiting a public accommodation because it is not in
compliance with the law; plaintiffs need not engage in the 'futile
gesture' of returning to a building with known barriers that the
owner does not intend to remedy.");  *Kramer v. Lakehills South,
L.P.*, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D. Tex. Jan. 21,
2014); *Betancourt*, 735 F. Supp. 2d at 602.[9]  In *Betancourt v.
Ingram Park Mall, LP*, 735 F. Supp. 2d at 599, the judge recognized
and exhibited a preference for a "broader" view than that the
"plaintiff's injury must be suffered by direct interaction with
architectural barriers" since the express language of the ADA
states that "plaintiffs need not engage in the 'futile gesture' of
alleging an intent to return to a place before it is made ADA-
compliant."  He determined that "in an ADA Title III case, the risk
of injury in fact is not speculative so long as the alleged
discriminatory barriers remain in place, the plaintiff remains

---

[9] One published Fifth Circuit case that does discuss
standing, *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312
(5th Cir. 1997), held that usually "a plaintiff seeking
injunctive relief based on an alleged past wrong must show that
there is a real or immediate threat that he will be wronged
again," but because the plaintiff Plumley died (and was replaced
by his wife as plaintiff), the Court found it "unlikely that
Landmark will wrong Plumley again."  *See also Betancourt v.
Ingram Park Mall, LP,* 735 F. Supp. 2d 587, 600-01 (W.D. Tex. Aug.
10, 2010); *Kramer v. Brodie Oaks Center, Ltd.,* No. A-13-CA-670
LY, 2014 WL 690629, at *2-3 (W.D. Tex. Feb. 21, 2014).

disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant. *Id.* at 604. The plaintiff "must at least prove knowledge of the barriers and that [he] would visit the building in the imminent future but for those barriers." *Id* at 599. Plaintiff's complaint appears to fit most easily into this category.

Plaintiff concedes that he is a "tester," which, as noted earlier, *Gilkerson* describes as "disabled individuals, who frequently along with an organization dedicated to the rights of disabled,[10] are 'serial plaintiffs' or 'testers' acting as private attorneys general challenging various entities' noncompliance in their places of public accommodation with Title III of the ADA, leading to a wide and varied spectrum of judicial decisions addressing complex issues of, and policies regarding, standing." 1 F. Supp. 3d at 573-74. Plaintiff's complaint contains a list of the ADA cases he has filed just in the Southern District of Texas to support his claim. A number of Fifth Circuit district courts have recognized that tester status alone, or tester status along with other factors, may be sufficient to create standing. *Gilkerson*, 1 F. Supp. 3d at 592, *citing Access 4 All, Inc.*, 2006 WL 2109966, at *7 ("Indeed, because Plaintiff Esposito is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the Hampton Inn to do additional examinations is made more, not less credible."), and *Betancourt*, 732 F. Supp. 2d at 710 ("A disabled tester who experiences the

---

[10] The Court observes that Plaintiff's law firm is named "Federal Disability Advocates."

discrimination prohibited by the ADA has standing to seek relief."), *citing Tandy v. City of Wichita*, 380 F.3d 11277, 1287 (10th Cir. 2004); *Kramer*, 2014 WL 690629, at *5 n.4 ("[T]he fact that a disabled plaintiff in a Title III case is a 'tester' does not change the analysis or the outcome."). Although the Fifth Circuit has not ruled on whether testers can satisfy the standing requirement under the ADA for injunctive relief, the Tenth and Eleventh Circuits have concluded that they can. *Mayes v. PTP, Investments, LLC*, 2014 WL 2155209, at *3 (E.D. La. May 22, 2014), *citing Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013). In California in a series of such "tester" cases, courts declared that the plaintiffs were "vexatious litigants." *Molski v Mandarin Touch Restaurant*, 347 F. Supp. 2d 860 (C.D. Cal. 2004), *Molski v Mandarin Touch Restaurant*, 359 F. Supp. 2d 924, 933 (C.D. Cal. 2005)("*Molski II*"), and *Molski v. Rapazzini Winery*, 400 F. Supp. 2d 1208 (N.D. Cal. 2005), but they were not followed.

In this Circuit *Gilkerson* was filed by a blind serial filer, Victoria Gilkerson, who had filed twenty-four essentially identical class action lawsuits seeking declaratory and injunctive relief against various financial institutions under Title III of the ADA and Texas law, together with Blind Ambitions Group, which had joined in thirty-three similar suits with either Gilkerson or a few other plaintiffs, to make automatic tellers machines ("ATMs") accessible to blind and visually impaired individuals. 1 F. Supp. 3d at 576. *Gilkerson* observed, "Because the statute does not authorize an award of damages to a prevailing plaintiff, but only

equitable relief and an award of attorneys' fees, concerns about abusive litigation by plaintiffs' lawyers must be balanced against widespread noncompliance with the ADA and inadequate enforcement of civil rights of individuals with disabilities." *Id.* This judge noted that "the Supreme Court recognized deterrence as an injury in fact sufficient to confer standing for prospective relief in *Friends of the Earth, Inc. v. Laidlaw Envt'l Services*, 528 U.S. 167 . . . (2000)." *Id.* at 584. "[T]he risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disable, and the plaintiff is 'able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant." *Gilkerson*, 1 F. Supp. 3d at 584. This judge found that Gilkerson had standing to seek relief because she was "a disabled tester who experience[d] the discrimination prohibited by the ADA," even if she intentionally visited the center for the purpose of filing this suit. *Id.* at 596, *quoting Betancourt*, 732 F. Supp. 2d at 710, and *Tandy*, 380 F.3d at 1287. Thus at the very least in the Fifth Circuit there is authority for the proposition that as long as Plaintiff qualifies in other ways, e.g., as a patron, tester status will not prevent him from having standing, and tester status alone may support standing.

Given this wide spectrum of tests for determining standing to sue under Title III of the ADA, used by different courts across the Fifth Circuit, the Court finds that with some refinement in repleading Plaintiff should be able to meet the requirements of

Rule 12(b)(1) through one.

In contrast, the Court finds that substantial amendment will be needed to Plaintiff's bare-bones complaint to satisfy the requirements of Rule 12(b)(6) and *Twombly*, *Iqbal*, and progeny. After carefully reviewing the record, the Court agrees with Defendants that Plaintiff's complaint fatally fails to distinguish among and give fair notice of each Defendant of his claims against it, as required by Rule 12(b)(6). Instead he simply makes vague, bare-bones, boilerplate charges tracing the wording of Title III of the ADA against the eight "Defendants" as a group. The fact that the two motions to dismiss are identical merely underlines the lack of any specificity as to what charges apply to what Defendant based on what facts.

As noted, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 127 S. Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5ᵗʰ Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Here Plaintiff needs to plead facts showing for what conduct each defendant is reasonably likely to be liable. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

Accordingly, for the reasons stated above, the Court

ORDERS that Defendants' motions to dismiss (#10 and #20) are DENIED, but Plaintiff shall replead his complaint within twenty days in a effort to cure the deficiencies cited above. The Court would point out that Plaintiff must similarly state such particular claims against each Defendant remaining in this suit. "As a general rule, '[e]ven if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties. In the Fifth Circuit, fairness requires that a litigant have the opportunity to be heard before a claim is dismissed, except where the claim is patently frivolous." *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5ᵗʰ Cir. 2015), *citing* 5B

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure--Civil § 1357* (3d ed. 2004), and *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

   SIGNED at Houston, Texas, this  23rd  day of  August , 2017.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE